UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SETH NADREAU, on behalf of
himself and all others similarly
situated,

        Plaintiffs,
v.                                                                  Case No:  2:10-CV-298-FtM-99SPC

LUSH COSMETICS NY, LLC and
LUSH COSMETICS, LLC D/B/A
LUSH HANDMANDE COSMETICS,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on Plaintiffs' Motion to Certify Rule 23 Sub-Class as to Count II of Amended Complaint (Doc. #74) filed on November 22, 2011.  Defendants' Memorandum in Opposition to Plaintiff's Motion to Certify Rule 23 Sub-Class as to Count II of the Amended Complaint (Doc. #81) was filed on December 7, 2011.  The instant Motion was referred to the undersigned by the District Court on June 8, 2012.  Upon review of the briefing, the undersigned requested that the Parties submit supplemental briefing on the issue of whether this Court should exercise supplemental jurisdiction over Count II of the Amended Complaint (Doc. #92).  The Parties submitted their supplemental briefing on July 13, 2012 (Docs. #95, 96).  Thus, the Motion is now ripe for review and the Court issues the following report and recommendations regarding the issues raised in the briefing.

1

## BACKGROUND

On June 3, 2010, Plaintiffs filed a Nationwide Collective Action Amended Complaint against Defendants in the name of Seth Nadreau and all others similarly situated. (Doc. #10). According to the Amended Complaint, Plaintiffs are all former employees of Defendant Lush who worked as managers in various retail locations throughout the country. (Doc. #10, ¶15). Plaintiffs allege under Count I that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (FLSA) when it employed them and those similarly situated to them for periods longer than forty hours per week without paying them at a rate of at least one and one-half times their regular pay rate. Id. at Count I. In addition to the FLSA claim (Count I), based on the same allegations, three of the originally named Plaintiffs (Whitmer, Gilles, and Hernandez) separately alleged a claim arising under the California Labor Code, §§ 510 and 1194. Id. at Count II.

On January 28, 2011, the Court conditionally certified this case as a collective action under the FLSA. (Doc. #49). The Court allowed notices to be sent to all similarly-situated employees nationwide holding the title of "manager," who worked for Defendant within three years of the date of this lawsuit. Pursuant to the Court's direction, the Parties submitted a stipulated Notice. Copies of the Court-approved Notice were sent to the potential opt-in Plaintiffs in March 2011, and by the end of the opt-in period, in addition to the nine original Plaintiffs, 36 additional Plaintiffs opted in to the litigation by filing notices of consent to join. The Notice advised putative class members that they could choose whether or not to join this lawsuit and stated that "it is entirely your own decision whether to join this lawsuit." Subsequently, nine opt-in Plaintiffs filed Notices of Withdrawal, because their claims were time barred, leaving 36 Plaintiffs in this litigation.

Plaintiffs inform the Court that of the 36 opt-in Plaintiffs who have filed notices of consent to join this action for purposes of the FLSA claim (Count I), 12 worked for Defendant in California (Bourtayre, De La Garza, Engleken, Jessica Gonzales, Jennifer Gonzales, Hershman, Hunt, Kraft, Masuda, Moore, Sedei, and Sipple) (these Plaintiffs, along with Whitmer, Gillies, and Hernandez, collectively referred to as "the California Plaintiffs") for a total of 15 California Plaintiffs. Thirty-three California employees did not opt in to this lawsuit, but received Notice. (Doc. #71-1, ¶ 9). In the instant Motion, the California Plaintiffs seek to have this Court certify a "hybrid" class action, encompassing a Federal Rule 23 sub-class of all current and former employees similarly situated to the California Plaintiffs (*i.e.* employed by Defendant as store managers in California), classified as exempt and consequently not paid overtime, and employed for any length of time within the last four years under the California Labor Code (Count II), along with a FLSA class under Count I.[1]

## DISCUSSION

In order to obtain sub-class certification, Plaintiff must satisfy all requirements set forth in Federal Rule of Civil Procedure 23(a) and at least one standard described in Rule 23(b). Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1321 (11th Cir. 2008). A plaintiff seeking sub-class certification has the burden of demonstrating entitlement to certification. Rustein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir. 2000). The Rule 23(a) prerequisites for class certification are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Under

---

[1] This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a). Federal Rule 23 "governs the class-certification issue even if the underlying claim arises under state law." Marlo v. United Parcel Service, Inc., 639 F.3d 942, 947 (11th Cir. 2011) (citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1437) (2010)). The Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 (federal question).

Rule 23(c), a court may divide a class into subclasses when all members challenge the same conduct by the defendant. Fed. R. Civ. P. 23(c)(4)-(5).

### A. Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires the sub-class to be "so numerous that joinder of all members is impracticable." Defendants do not contest the Rule 23(a) numerosity requirement in its opposition brief, but reserved all rights to do so at a later date. Here, Plaintiffs cite that there are approximately 45 putative class members in the proposed sub-class, 15 of whom already are in the litigation as opt-in Plaintiffs for the purposes of the FLSA claim. "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983). "Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1267 (11th Cir. 2009) (emphasis in original). Given that 15 California Plaintiffs have already opted into the FLSA action and that there are 33 California employees that are identified, but did not opt-in (Doc. #71-1), the Court recommends that numerosity is satisfied.

#### 2. Commonality

The commonality requirement demands only that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This part of the rule "does not require that all the questions of law and fact raised by the dispute be common," Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1557 (11th Cir. 1986), or that the common questions of law or fact "predominate"

4

over individual issues. To satisfy the commonality requirement, a class action must involve issues that are susceptible to class-wide proof. Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001).

Plaintiffs allege that the commonality requirement is easily satisfied in this case as there is only one legal issue – whether Defendants misclassified the California Plaintiffs as exempt for purposes of the California Labor Code, §§ 510, 1194, and therefore owe unpaid overtime compensation to the California Plaintiffs and the proposed sub-class. Plaintiffs further argue that the only issue for the Court's determination on Count II is whether the California Plaintiffs spent more than half their time on management duties. Cal. Labor Code § 515(e). Therefore, Count II involves an issue that is susceptible to class-wide proof. Defendant challenges this, arguing that no evidence has been presented to the Court of the putative class members' job duties and whether there are factual issues common to the members of the class.

The Eleventh Circuit has noted that the Rule 23(a)(2) commonality requirement is a "low hurdle." Williams v. Mohawk Industries, Inc., 568 F.3d 1350, 1356 (11th Cir. 2009). In Williams, the court looked to plaintiff's complaint to see if the plaintiff raised questions that were common to all members of the class. Id. "We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011). The Eleventh Circuit has further noted that the predominance standard of Rule 23(b)(3) is "far more demanding." Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1175 (11th Cir. 2010). See also J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1299 (10th Cir. 1999) ("Because the [commonality] requirement may be satisfied by a single common issue, it is easily met."); Forbush v. J.C. Penney Co., Inc., 994 F.2d

1101, 1106 (5th Cir. 1993) ("the threshold of commonality is not high"). Based on this standard, the Court recommends that Plaintiffs have satisfied the commonality requirement. They have alleged in Count II that Defendants misclassified the California Plaintiffs as exempt and failed to pay them all overtime compensation. This is enough to satisfy the commonality requirement. See Ditts v. Penske Logistics, LLC, 267 F.R.D. 625, 633 (S.D. Cal. 2010).

### 3. Typicality

To satisfy the typicality requirement, the class representative must have the same interest and suffer the same injury as the class members. Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1322 (11th Cir. 2008) (citing Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004)). Fed. R. Civ. P. 23(a)(3) provides that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The main focus of the typicality requirements is that the plaintiffs will advance the interests of the class members by advancing their own interests. Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 698 (S.D. Fla. 2004). "'Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004) (citing Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)). "The typicality requirement is satisfied if 'the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory.'" Agan, 222 F.R.D. at 698 (citing Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)). The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary. Agan, 222 F.R.D. at 698. The main concern is whether the named class representatives' claims have the

6

same essential characteristics as the class members at large. Id.[2] It has been noted that the test for typicality, like commonality, is not demanding. In re Disposable Contact Lens Antitrust Litig., 170 F.R.D. 524, 532 (M.D. Fla. 1996) (citing Shipes v. Trinnity Indus., 987 F.2d 311, 316 (5th Cir. 1993)).

In this case, the Plaintiffs contend that typicality is met as the California Plaintiffs and the proposed sub-class assert precisely the same claim, which arise from the same payroll practice – namely, Defendant's failure to pay overtime compensation as a result of their classification of Plaintiffs as exempt. Defendant disagrees, raising the same arguments for the typicality requirement as they did for the commonality requirement – that a common exemption policy alone is not enough to support Rule 23 certification. Defendant argues that there are factual distinctions among putative sub-class members, such as job duties. Yet, the representative Plaintiffs all allege under Count II that the Defendant misclassified the California managers as exempt from overtime pay under the California Labor Code. Therefore, since the Plaintiffs' and other putative sub-class members' claims arise out of the same conduct and legal and factual basis, the Court recommends that the Plaintiffs have satisfied the typicality requirement.

**4. Adequacy of Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two separate inquiries under this section: (1) whether there are any substantial conflicts of interest between the named representatives of the class and the class members; and (2) whether the representatives will

---

[2] Neither typicality nor commonality requires that all class members' claims be identical, and both may be satisfied even if some factual differences exist between the class member and the class representatives. Prado-Steinman, 221 F.3d at 1279 n.14.

adequately prosecute the action. Busby, 513 F.3d at 1323 (citing Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003)). This requirement serves to uncover any conflict of interest that named parties may have with the class they represent. Amchem Products, Inc., v. Windsor, 521 U.S. 591, 627, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." Id. Minor conflicts alone will not defeat class certification, the conflict must be "'fundamental'" to the specific issues in the case. Id. Under this section, the court must also consider the competency and any conflicts that the class counsel may have. Amchem, 521 U.S. at 627 n.20.

With respect to the first inquiry, Plaintiffs argue that there are no conflicts of interest between the named representatives of the class and the proposed sub-class members as the California Plaintiffs are willing and able to vigorously prosecute this action on behalf of the sub-class. With regard to the second inquiry, Plaintiffs' counsel states that they have litigated, and are currently litigating, complex class/collective actions in Florida, involving as many as 1,500 individuals nationwide. Defendant does not dispute that the Plaintiffs' attorneys are qualified, experienced, and generally capable to conduct the litigation. However, Defendant does argue that there is a conflict of interest between the named Plaintiffs and other members of the sub-class. Specifically, Defendant alleges that the named Plaintiffs and their counsel are seeking to use a Rule 23 sub-class to force people into this litigation, even those who already chose not to opt in to this case after receiving the Court-approved notice for the FLSA collective action (Count I).

8

The Court recommends that adequacy is satisfied in this case as counsel for the Plaintiffs is experienced in class and collective action litigation. Further, all sub-class members would benefit from the relief sought by receiving overtime wages that they allege are due to them. Even though certain putative sub-class members did not opt in to the FLSA collective action when notice was sent, they may very well wish to be included in the Rule 23 sub-class. The Court does not see that there is any conflict in the fact that certain California Plaintiffs are members of both the FLSA class as well as the California Labor Code sub-class and others are not based on the record in this case.

### B. Rule 23(b)(3) Requirements

For class certification to be appropriate under Rule 23(b)(3), common questions must predominate over questions that affect only individual members and the class action must be a superior method for a "'fair and efficient adjudication of the controversy.'" Cooper, 390 F.3d at 722 (citing Fed. R. Civ. P. 23(b)(3)). See also Busby, 513 F.3d at 1324. Rule 23(b)(3) imposes two additional requirements to Rule 23(a) which are the requirements of increased efficiency and predominance. Id. (citing Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 (11th Cir. 1997)).

#### 1. Predominance of Common Issues

The issues raised in the class action that are subject to generalized proof and which are applicable to the class as a whole "'must predominate over those issues that are subject only to individualized proof.'" Babineau v. Federal Exp. Corp., 576 F.3d 1183, 1191 (11th Cir. 2009), (quoting Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Common issues will not predominate over individual questions if, 'as a practical matter, the resolution of

9

[an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" Id. at 1191 (quoting Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014, 1023 (11th Cir. 1996)). A class should not be certified if it appears that most of the plaintiffs' claims have highly case-specific factual issues. Id. The predominance requirement is "far more demanding" than the commonality requirement. Jackson, 130 F.3d at 1005.

Defendant argues that the claims in Count II require individualized proof that will predominate over any arguable class-wide claims. Plaintiffs cite to the reasons discussed with respect to commonality and typicality, specifically the issue of whether Defendant misclassified the California Plaintiffs as exempt, to show that predominance is satisfied. Plaintiffs maintain certification is proper because there is a common question as to whether Defendants employ certain "pay practices," including inappropriately and improperly classifying employees as exempt. See Pl. Compl. ¶¶15-18.

The Eleventh Circuit has recently summarized the predominance principles as follows:

> Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. If after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, [their] claims are not suitable for class certification under Rule 23(b)(3). In practical terms, while it is not necessary that all questions of fact or law be common, the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.
>
> To assess the impact of a common question on the class members' claims, a district court obviously must examine not only the defendant's course of conduct towards the class members, but also the class members' legal rights and duties. A plaintiff may claim that every putative class member was harmed by the

10

> defendant's conduct, but if fewer than all of the class members enjoyed the legal right that the defendant allegedly infringed, or if the defendant has non-frivolous defenses to liability that are unique to individual class members, any common questions may well be submerged by individual ones. This principle emerges clearly from our case law and that of other circuits. See, e.g., Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) ("Without the existence of a common contract, of course, there can also be no commonality with respect to whether T–Mobile's conduct ..., even if undertaken pursuant to a uniform policy, constituted a breach of every class member's particular employment contract.").

Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1170-71 (11th Cir. 2010) (internal citations and quotation marks omitted). To determine whether common questions of law or fact predominate, the Court is required to examine the elements of the causes of actions set forth in the Complaint. Erica P. John Fund, Inc. v. Halliburton Co., --- U.S. ---, 131 S. Ct. 2179, 2184, 180 L. Ed. 2d 24 (2011); Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1260 (11th Cir. 2003). Common questions predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

The California Labor Code Count as set forth in the Amended Complaint (Doc. #10) raises the issue of whether Plaintiffs are entitled to be paid time and one-half for each hour worked in excess of eight (8) per day and/or forty (40) per workweek and to have such overtime calculated in accordance with the California Labor Code § 510. Under the California Labor Code, the overtime statute states that "[a]ny work in excess of eight hours in one workday and. . . 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay." Cal. Lab. Code. § 510(a). Plaintiffs allege that all similarly-

11

situated Plaintiffs were misclassified as exempt from overtime pay because they were managers when in fact their job duties prove that they should have been classified otherwise and entitled to overtime pay. Section 515(a) of the California Labor Code sets forth the exemptions to overtime pay, including executive, administrative, and professional employees, which engage in certain duties.

The Court recommends that Plaintiffs in this case have made a sufficient showing on the face of their Amended Complaint that legal and factual questions relating to each class member's FLSA and California Labor Code claims – namely, whether Defendants' pay practices violated the FLSA by failing to properly classify certain employees as exempt – can be achieved through class-wide proof to determine liability. The Court has no discovery record cited by the Parties that would inform the Court as to whether there are individual issues with regard to each California Plaintiff which would preclude class certification. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 947 n.15 (9th Cir. 2009) ("district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis"). It appears that factual questions and inquiries regarding the duties of each class member relate to damages, not liability. See Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, despite minor factual difference between individual class members, where the case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses").[3]

---

[3] The Court is making no determinations or findings at this time as to any issues that may be raised by the Defendants in any future decertification motion. Defendants have previously represented that they intend to challenge the conditional certification of the collective action on the basis that Plaintiffs are not "similarly situated." (Doc. #82, p. 4); see Anderson v. Cagle's, Inc., 488 F.3d 945 (11th Cir. 2007). The Court is only making a determination at this time that based on Plaintiffs' allegations in its Amended Complaint, they have satisfied the required showing that common legal and factual questions exist.

## 2. Superiority

Federal Rule 23(b)(3) requires a court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court looks to the four non-exclusive matters listed in Rule 23(b)(3) which are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) the likely difficulties in the managing a class action.

Defendant argues that a Rule 23 sub-class is not a superior method to adjudicate Count II because it would be confusing to the potential sub-class members and would potentially violate their due process rights because the 33 California employees who did not choose to affirmatively join the FLSA action by opting-in after receiving the Court-approved notice, would be forced to join this lawsuit – and be bound by its results – unless they affirmatively opt out of the Rule 23 sub-class. In other words, the Rule 23 opt-out requirement is incompatible with the FLSA § 216(b) active opt-in requirement. It has been noted that "[t]he question of whether these two distinct types of aggregate litigation may co-exist within one case has divided the trial courts in this circuit and elsewhere." Ervin v. OS Restaurant Services, Inc., 632 F.3d 971, 973 (7th Cir. 2011). It appears that the Eleventh Circuit has yet to address this exact issue.

Section 216(b) of the FLSA expressly limits the scope of class actions for overtime pay by requiring putative collective action members to opt-in to the action. The opt-in requirement was put in place by Congress to "eradicate the problem of totally uninvolved employees gaining a recovery as a result of some third party's action in filing suit." Cameron-Grant v. Maxim

Healthcare Services, Inc., 347 F.3d 1240, 1249 (11th Cir. 2003). On the other hand, state law class actions brought in federal court pursuant to Federal Rule 23 require prospective plaintiffs to opt-out of the class upon notice of the case if they wish to not be a part of the class. The Fifth Circuit has noted that the FLSA's opt-in requirement and Rule 23's opt-out requirement are incompatible and mutually exclusive. See Resneck v. Oppenheimer & Co. Inc., 2008 WL 113665, *4 (S.D. Fla. Jan. 8, 2008) (citing LaChapelle v. Owens-Illinois, Inc., 513 F. 2d 286, 289 (5th Cir. 1975) (holding that Rule 23 opt-out actions and FLSA opt-in claims are mutually exclusive and irreconcilable));[4] see also Moeck v. Gray Supply Corp., 2006 WL 42368, *5 (D.N.J. Jan. 5, 2006) (denying class certification in a hybrid FLSA/state class action and holding that by allowing the plaintiff "to circumvent the opt-in requirement and bring unnamed parties to federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions"). In LaChapelle, which the Eleventh Circuit has repeatedly cited in its subsequent opinions, the Fifth Circuit held that there is a fundamental and irreconcilable difference between § 216(b) and Rule 23:

> Rule 23(c) provides for 'opt out' class actions. FLSA § 16(b) allows as class members only those who 'opt in.' These two types of class actions are mutually exclusive and irreconcilable . . . . Rule 23 cannot be invoked to circumvent the consent requirement of the third sentence of FLSA § 16(b) . . . .

LaChapelle, 513 F.2d at 288; see also Cameron-Grant v. Maxim Healthcare Services, Inc., 347 F.3d 1240 (11th Cir. 2003) (detailing the wide range of differences between § 216(b) collection action and Rule 23 class action) (citing LaChapelle); Grayson v. Kmart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ("[I]t is clear that the requirements for pursuing a § 216(b) class

---

[4] Decisions made by the Fifth Circuit Court of Appeals prior to October 1, 1981, are binding precedent upon this Court. Bonner v City of Pritchard, 661 F. 2d 1206, 1209 (11th Cir. 1981).

action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure.") (citing LaChapelle). As this Court has previously noted along those same lines:

> The remedies offered by the FLSA are not like other causes of action, and a collective action is markedly distinct from a Rule 23 class action, in both procedure and principle. There is no doubt that the opt-in/opt-out distinction represents "a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by [the] FLSA." Schmidt v. Fuller Brush Co., 527 F.2d 532, 536 (8th Cir. 1975). While both actions involve a plaintiff proceeding in a representative capacity, under § 216(b), even if a plaintiff can demonstrate that other potential plaintiffs are "similarly situated" employees, the plaintiff has no independent right to represent such individuals. See, e.g., Cameron-Grant v. Maxim Healthcare Serv., Inc., 347 F.3d 1240, 1249 (11th Cir. 2003). Instead, the potential plaintiffs must file with the district court written consent to become a party plaintiff. 29 U.S.C. § 216(b). Unlike most Rule 23 class actions, a § 216(b) action does not become a collective action unless another plaintiff affirmatively chooses to opt into the class. See Cameron-Grant, 347 F.3d at 1249. "[I]n contrast, to Rule 23 class actions, the existence of a collective action under § 216(b) does depend on the active participation of other plaintiffs." Id.

Perez v. Avatar Properties, Inc., No. 6:07-cv-792-Orl-28DAB, 2008 WL 4853642, * (M.D. Fla. Nov. 6, 2008).

Given the Eleventh Circuit and this Court's views on the incompatibility of both a Federal Rule 23 class action and FLSA collective action, the Court recommends that a Rule 23 sub-class of California Plaintiffs brought in a hybrid action with the FLSA Count is not a superior method of adjudicating Count II.

## CONCLUSION

The Court respectfully recommends that Plaintiffs have not met their burden under Federal Rule 23(b)(3) to show that a sub-class of California Plaintiffs be certified with regard to Count II.[5]

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

Plaintiffs' Motion to Certify Rule 23 Sub-Class as to Count II of Amended Complaint (Doc. #74) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

---

[5] Plaintiffs have alleged that this Court's jurisdiction over Count II is based upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). The Court had the Parties submit supplemental briefing on this issue of whether this Court should retain supplemental jurisdiction as it was not raised in the briefing. "The Court *sua sponte* may raise a jurisdiction defect at any time." Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). The Eleventh Circuit has articulated a two-fold inquiry to determine whether a jurisdictional basis exists to support a plaintiff's state law claim in federal court. Baggett, 117 F.3d at 1352. First, the Court must decide whether it has the power to hear the state law claims. Second, the Court must decide in its discretion if it will retain jurisdiction over the state law claims. Id. (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966); 28 U.S.C. §§ 1367(a) and (c). The authority for the Court to assert its power to hear state law claims resides within 28 U.S.C. § 1367(a), which provides in part that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added). "The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative facts with a substantial federal claim." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 742-43 (11th Cir. 2006); see Gibbs, 383 U.S. at 725; Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1563-64 (11th Cir. 1994).

In the instant matter, the Court recommends based on the pleadings and memoranda of law that the Plaintiffs' state law claim under Count II arise from the Plaintiffs' employment relationship with the Defendant and share a common nucleus of operative facts with the FLSA claim such that they form part of the same case or controversy. Therefore, supplemental jurisdiction is authorized. Even so, the Court has the discretionary authority to decline to exercise supplemental jurisdiction over the state law claim under Count II pursuant to 28 U.S.C. § 1367(c). The Court recommends that it would be more proper to address this if a dispositive motion is filed as to this issue.

**Respectfully recommended** at Fort Myers, Florida, this 13th day of August, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record